**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 10, 2026**

# In the Court of Appeals of Georgia

A25A1567. ARTEAGA-ITUBBE v. THE STATE.

PIPKIN, Judge.

Appellant Sandra Arteaga-Itubbe was jointly indicted with David Sanchez-Romero and Izael Camacho-Cardenas for trafficking in methamphetamine and driving without a license. After a joint jury trial with Sanchez-Romero,[1] Appellant was found guilty of both counts, and she was sentenced to serve 28 years in confinement followed by two years on probation. On appeal, Appellant contends that the evidence was insufficient to support her convictions and that she received ineffective assistance of counsel at trial. For the reasons that follow, we affirm.

---

[1] Camacho-Cardenas pleaded guilty prior to trial. Sanchez-Romero was found guilty, and this Court affirmed his convictions. See *Sanchez-Romero v. State*, A25A0271 (Ga. App. June 10, 2025) (unpublished).

1. Appellant first argues that the evidence presented at trial was insufficient to support her convictions as a matter of due process. When evaluating such claims, "we must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kennedy v. State*, 371 Ga. App. 163, 164 (1) (899 SE2d 803) (2024) (citation and punctuation omitted). Construed to support the jury's verdict, see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed the following.

Officers with the Gwinnett County Police Department, working in tandem with federal drug agents, were involved in an investigation of Camacho-Cardenas regarding his connection to a potential methamphetamine broker in the Atlanta area. On April 12, 2022, officers set up a controlled buy with Camacho-Cardenas, which eventually led to his arrest and the impounding of his car. During an inventory search of the car, officers found a box containing five kilograms of methamphetamine packaged in small, individual baggies and pieces of mail addressed to Appellant at 174 Beaverwood Court. Officers also seized and later searched two cell phones; officers determined that one phone belonged to Camacho-Cardenas and the other belonged to Appellant. The

phones' records showed that Camacho-Cardenas and Appellant had exchanged numerous messages prior to his arrest.

On April 13, 2022, Camacho-Cardenas called Appellant from jail. In that call, he told Appellant that he felt that "the sky [was] falling down" on him and asked Appellant for help. Specifically, he instructed Appellant to go to their apartment and get "the dirty clothes." The pair discussed how to remove items from the apartment, which included involving the assitance of a third party who would "be in charge of taking out the things." The lead investigator testified at trial that, in his experience as a drug investigator, it was common for parties to use code words for drugs when speaking on the phone, and it was also common for other members of a drug organization to clear drugs from a stash house after someone in the organization was arrested.

Officers set up surveillance on the Beaverwood Court address and at 1359 Beaver Ruin Road, an apartment complex associated with Camacho-Cardenas. Officers spoke with the apartment complex's management company and confirmed

that Appellant was listed on the lease for apartment number 7201.[2] Around 5:00 p.m. on April 14, 2022, officers observed two pick-up trucks, one red and one gray, leave the house located at 174 Beaverwood Court and drive to the apartment complex at 1359 Beaver Ruin Road where the trucks parked in front of Building 7. Officers saw Sanchez-Romero exit his truck with nothing in his hands and walk up the stairs to unit 7201 while Appellant stayed in her truck. She and Sanchez-Romero were both on their phones, and Appellant appeared to be keeping watch while Sanchez-Romero was inside the apartment. Sanchez-Romero eventually exited the apartment with a seemingly heavy laundry bag and returned to his truck. The pair then drove their trucks toward the exit of the apartment complex. Officers conducted an investigatory traffic stop, obtained consent to search both vehicles, and, during the search of Sanchez-Romero's truck, located 6.5 kilograms of methamphetamine inside the laundry bag. The drugs were packaged in bags identical to those found in Camacho-Cardenas' car on the April 12th drug bust. Officers asked Appellant what she was doing at the apartment, and she said she was "there to pick up some stuff" but that

---

[2] In a subsequent search of this apartment, officers noticed very little furniture in the home; they located items belonging to Camacho-Cardenas and bags of cell phones.

she "didn't know what the stuff was." The State also presented evidence that Appellant was driving without a valid license.

Based on the foregoing, we conclude that the evidence presented at trial was sufficient to support Appellant's convictions for trafficking in methamphetamine and driving without a license. See OCGA §§ 16-13-31 (e) (trafficking in methamphetamine); 40-5-20 (a) (driving without a license); 16-2-20 (party to a crime).

2. Appellant also contends that she received ineffective assistance of trial counsel in three ways: (a) when counsel failed to call Camacho-Cardenas as a witness at trial, (b) when counsel failed to object to certain hearsay testimony elicited from the lead investigator, and (c) when counsel inadequately responded to the prosecutor's improper statements during closing argument. To establish ineffective assistance of counsel, a defendant must show that her counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's

representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011) (citation omitted). Indeed, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014) (citation and punctuation omitted). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citation and punctuation omitted). With these principles in mind, we review Appellant's claims of ineffective assistance.

(a) Appellant alleges that her trial counsel was ineffective for failing to "investigate and present testimony from co-defendant [Camacho-Cardenas]" at trial. At the motion for new trial hearing, Appellant called Camacho-Cardenas as a witness; he testified that, had he been called as a defense witness at trial, he would have told the jury that Appellant had no knowledge of or involvement with his drug crimes. Appellant also called her trial counsel as a witness at the hearing. He testified that,

6

during his investigation of the case, he reached out to Camacho-Cardenas' attorney to receive permission to speak with him, and the attorney told counsel "no." Counsel testified that he spoke with Appellant about her co-defendants and what they would say if they were called to the stand and that he had no intention of calling Camacho-Cardenas as a witness for "several different reasons." Counsel explained that he: wanted to separate Appellant from Camacho-Cardenas as much as possible; wanted to limit the information at trial regarding their marital relationship; had "gotten another transaction excluded from trial . . . and I didn't want that to be potentially used as impeachment, therefore making the crime look bigger"; and he was concerned, based upon Camacho-Cardenas' behavior, that the jury would not find him to be a credible witness. Counsel further explained that, while he was aware that Camacho-Cardenas might attempt to testify that Appellant had no knowledge of the crime, such testimony would likely draw an objection for speculation and be excluded.

Given all of these concerns, trial counsel made the strategic decision not to call Camacho-Cardenas as a defense witness, and we cannot say that counsel's decision was patently unreasonable. See *Atkinson v. State*, 301 Ga. 518, 526-27 (6) (h) (801 SE2d 833) (2017) (trial counsel "made a reasonable strategic decision not to call" a witness

when she had concerns "that he might not be a credible witness"); *McDuffie v. State*, 298 Ga. 112, 116(2) (779 SE2d 620) (2015) (appellant failed to show that trial counsel's "strategic decision not to call" a certain witness was "entirely unreasonable" when trial counsel was concerned that the witness would be "more harmful than helpful"). And because Appellant has failed to show deficient performance, this claim of ineffective assistance fails.

(b) Next, Appellant alleges that trial counsel was ineffective for failing to object to "prejudicial hearsay testimony and improper characterizations by law enforcement witnesses" when one officer allegedly "label[ed Appellant] as a potential courier" of drugs. Appellant's enumeration cites to a few pages of the transcript, but, the cited pages do not depict any hearsay testimony or references to Appellant as a drug courier. Thus this claim of ineffective assistance presents nothing for this Court to review. See *McDaniel v. State*, 367 Ga. App. 376, 379(d) (885 SE2d 245) (2023) ("It is not this Court's job to cull the record on behalf of Appellant to find alleged errors, as appellate judges are not like pigs, hunting for truffles buried in briefs." (citation modified)). Moreover, Appellant failed to question her trial counsel about this issue at the motion for new trial hearing, and "[i]n the absence of evidence to the contrary,

counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." *Mitchell v. State*, 290 Ga. 490, 492(4)(a) (722 SE2d 705) (2012) (citation and punctuation omitted).

(c) Finally, Appellant alleges that trial counsel was ineffective for failing to adequately respond "to the prosecutor's improper and misleading statements of law during closing argument." However, Appellant did not raise this claim of ineffective assistance in the trial court and, therefore, it is not preserved for appellate review. See *Golson v. State*, 306 Ga. 101, 101(2) (829 SE2d 74) (2019).

*Judgment affirmed. McFadden, P. J., and Hodges, J., concur.*